**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| SKYLAR HAMMAN, STEWART | § | |
| MCGEE, and STEVE RODGERS, | § | |
| Individually and On Behalf of All | § | CIVIL ACTION NO. _____ |
| Others Similarly Situated, | § | |
|     *Plaintiffs*, | § | |
| | § | |
| vs. | § | |
| | § | |
| WESTERN EDGE CONSTRUCTION, | § | |
| LLC, MARK TUCKER, and CINDY | § | JURY TRIAL DEMANDED |
| TUCKER, | § | |
|     *Defendants*. | § | |

## PLAINTIFFS' COMPLAINT

Plaintiffs Skylar Hamman, Stewart McGee, and Steve Rodgers, individually and on behalf of all others similarly situated, now file this Complaint against Defendants Western Edge Construction, LLC, Mark Tucker, and Cindy Tucker, complaining of their violations of the Fair Labor Standards Act.  In support, Plaintiffs state as follows.

### PARTIES

1.      The Plaintiffs in this case are Skylar Hamman ("Hamman"), Stewart McGee ("McGee"), and Steve Rodgers ("Rodgers").

2.      Hamman is a natural person who currently resides in Dickinson, Texas, which is in Galveston County, Texas.  A copy of his consent to participate in this collective action is attached hereto as Exhibit A.

3.      McGee is a natural person who currently resides in Ozark, Missouri.  A copy of his

1

consent to participate in this collective action is attached hereto as Exhibit B.

4.      Rodgers is a natural person who currently resides in Springfield, Missouri.  A copy of his consent to participate in this collective action is attached hereto as Exhibit C.

5.      Defendant Western Edge Construction, LLC, is a Texas Limited Liability Company headquartered in Santo, Texas.  It may be served with process through its registered agent for service of process, Cindy L. Tucker, 33275 U.S. Highway 281 North, Lipan, Texas, 76462, or as may otherwise be permitted under the Federal Rules of Civil Procedure.  Upon information and belief, Western Edge is owned by its two members, Mark and Cindy Tucker.

6.      Defendant Mark Tucker is the President of Defendant Western Edge Construction and is a member of the LLC.  As an owner and high-level manager of Western Edge Construction and, thus, was (with respect to Plaintiffs and the class they seek to represent) an "employer" as that term is defined by the Fair Labor Standards Act.  Mark Tucker may be served with process at 33276 U.S. Highway 281 North, Lipan, Texas, 76462, wherever else he may be found, or as may otherwise be permitted under the Federal Rules of Civil Procedure.

7.      Defendant Cindy Tucker is the wife of Defendant Mark Tucker and is also a member of Defendant Western Edge Construction.  As an owner and high-level manager of Western Edge Construction she was (with respect to Plaintiffs and the class they seek to represent) an "employer" as that term is defined by the Fair Labor Standards Act.  Cindy Tucker may be served with process at 33276 U.S. Highway 281 North, Lipan, Texas, 76462, wherever else she may be found, or as may otherwise be permitted under the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

8.     The Court has federal question jurisdiction over the subject matter of Plaintiffs' claims pursuant to 28 U.S.C. § 1331 because they arise under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*

9.     The Court has general personal jurisdiction over Defendants because they reside and/or regularly do business within the state of Texas.

10.     Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this suit occurred within this judicial district.

## FACTS

11.     Hamman was employed by the Defendants as a carpenter from January 2014 until sometime in November 2015.  Hamman worked on various constructions projects being managed by the Defendants.  These projects took place in Kansas, Oklahoma, and throughout the state of Texas, including an approximately six-week long project in Cypress, Texas, which is found within this judicial district.

12.     McGee was employed by the Defendants at various times from February 2014 through September 2016.  He was nominally employed as a carpenter but he, like other workers on Defendants' construction crews, would often be called upon to perform other jobs, such as masonry, hanging gutters, or drilling holes in the parking lot for the purpose of installing parking space bumpers.  Like Hamman, McGee worked on construction jobs for Defendants in various locations throughout the state of Texas.

13.    Rodgers was also employed by the Defendants as a carpenter.  He worked for Defendants from approximately 2013 through October 2016.

14.    Defendants' work crews regularly worked more than forty hours per week. Sometimes, as with above-referenced job that occurred in Cypress, Texas (i.e., one that occurred within this district), the crews would literally work seven days a week for many consecutive weeks. In those weeks, the workers would easily put in 80 or more hours per week.  But they would not receive any overtime pay for all the extra hours they put in.

15.    In Hamman's case, for example, he typically worked around 70 hours per week, though it was sometimes more.  He is aware of other construction workers employed by the Defendants who worked even more, upwards of 90 or even 100 hours per week.

16.    McGee and Rodgers both regularly worked at least 60 hours per week, and often more.

17.    Defendants' construction workers supposedly received a "salary" and a per diem. However, on their pay checks (which upon information and belief were signed by Defendant Cindy Tucker) there would often be an indication of an hourly rate and that they had worked forty hours per week.   That number of hours was listed without regard to the actual number of hours they had worked.  Upon information and belief, moreover, if a job ended early in a workweek and the Plaintiffs were not going immediately to another job, they would not necessarily receive their full "salary" for the week.  It is not clear, therefore, that the Plaintiffs were being paid on a salary basis as described in the Department of Labor's FLSA regulations.

4

18.     Further, there was no clear agreement between the Plaintiffs that the salary paid was to cover all hours worked during the workweek, however many or few.  Also, the per diem was an integral part of the employees' weekly pay and, thus, is properly counted as part of their "regular rate" for the week, as the FLSA defines that term.

19.     Plaintiffs and his fellow construction workers were all non-exempt employees as that term is defined by the Fair Labor Standards Act.

20.     Throughout much of their employment, however, the Defendants did not pay their workers any overtime pay.  This failure constituted a violation of the Fair Labor Standards Act and it was done willfully.

21.     For example, at one point during his employment Hamman complained directly to David Rosas, a supervisor, that he should be getting overtime.  Rosas responded by telling Hamman that he needed to decide whether he wanted to push that issue or continue working.  Because of that threat, Hamman did not push the issue.  Upon information and belief, though, neither Rosas nor the other Defendants did anything following Hamman's complaint to investigate their obligations under the law.  After all, if they had investigated they undoubtedly would have learned that all their construction workers were entitled to overtime pay.

22.     That proposition became completely obvious when, in 2015 (and while all three of the Plaintiffs were working for Defendants), the United States Department of Labor began investigating into Western Edge's pay practices.  Though the Department called to Defendants' attention that they were not properly paying their construction workers, they nonetheless continued failing and refusing

to pay their workers the overtime pay to which they were entitled.  Defendants continued failing to pay the Plaintiffs any overtime until approximately March 2016 when, upon information and belief, they suddenly lowered their construction workers' rates of pay and began paying overtime.  It is unknown at this time whether this was done for all of their work crews or only for the one that the Department of Labor was investigating.

23.     However, even after the Department of Labor first informed Defendants that they were violating their workers' FLSA rights, there was still a several month-long period during which the Defendants continued to break the law.  And, when they did start paying overtime (after Hamman's employment had ended but while the other Plaintiffs still worked there), they did nothing to pay their employees for the vast amounts of overtime that had been denied them in the preceding years.

24.     Ultimately, Plaintiffs believe that Western Edge reached an agreement with the Department of Labor to pay their construction workers the back wages that they were owed (but not any of the liquidated damages to which they are entitled under the law).  Western Edge was supposed to be making installment payments to the Department but when the first payment came due they reneged on their promise to settle.

25.     Despite the substantial amount of overtime hours worked by Hamman, McGee, Rodgers, and their many fellow Western Edge construction workers, the Defendants failed to pay them overtime premiums for hours worked in excess of forty hours per week.

26.     Upon information and belief, even after Defendants began paying overtime premium

to their construction workers around March 2016, they failed to include the per diem amounts into their calculations and, thus, failed to pay their workers all the overtime pay that they were owed. This is because the per diems should have been included within the workers' regular rates, and then overtime premiums paid based upon the workers' respective regular rates.

27.    At all material times, the Defendants have been employers, within the meaning of 29 U.S.C. § 203(d), of Plaintiffs and the other workers employed on their various work crews.

28.    At all material times, the Defendants have been subject to regulation by the Fair Labor Standards Act.  This is because the Defendants at all relevant times had annual dollar volume of business of at least $500,000, had at least two employees, and those employees were engaged in commerce in the form of the construction projects they worked on, and in the course of such commerce those employees worked on construction goods or materials that themselves had been moved in or produced for commerce.

29.    Hamman was at all relevant times a non-exempt employee under the FLSA and therefore entitled to receive overtime compensation for all his work hours exceeding forty hours per week.

30.    McGee was at all relevant times a non-exempt employee under the FLSA and therefore entitled to receive overtime compensation for all his work hours exceeding forty hours per week.

31.    Rodgers was at all relevant times a non-exempt employee under the FLSA and therefore entitled to receive overtime compensation for all his work hours exceeding forty hours per

week.

32.     Defendants did not pay Hamman overtime compensation for all his work hours exceeding forty hours per week.

33.     Defendants did not pay McGee overtime compensation for all his work hours exceeding forty hours per week.

34.     Defendants did not pay Rodgers overtime compensation for all his work hours exceeding forty hours per week.

## COLLECTIVE ACTION ALLEGATIONS

35.     Hamman, McGee, and Rodgers bring this complaint as a collective action pursuant to 29 U.S.C. § 216(b).  In doing so, they seek to represent a class of persons ("Class Members") who – within the past three years and to the present time – were, are or hereafter will be employed by Defendants as carpenters, painters, and other construction site laborers and who were not paid overtime compensation for hours worked in excess of forty hours per workweek.

36.     Per 29 U.S.C. § 216(b), this action may be brought as an "opt-in" collective action for the claims asserted by Plaintiff because Plaintiffs' claims are similar to – if not identical – to the claims possessed by other Class Members.

37.     Hamman, McGee, and Rodgers have actual knowledge that Class Members who worked for the Defendants, like them, were not paid overtime to which they were due.

38.     The Plaintiffs are similarly situated to the Class Members, and they all have been subjected to a common practice, policy, or plan of failing or refusing to pay overtime premium pay,

in clear violation of the FLSA.

39.     The names, addresses and other contact information for the Class Members are discoverable from the Defendants.  To the extent required by law and authorized by the Court, notice will be provided to these individuals via First Class Mail or using techniques and a form of notice similar to those customarily used in representative actions like this one.   If Class Members come forward even before the Court certifies this case for collective action handling, consents to participate will be filed with the Court.

40.     Although the exact amount of damages may vary among the Class Members, damages can be calculated, summed and allocated based on a common mathematical formula.

41.     The claims of Plaintiffs and the Class Members arise from a common nucleus of operative facts, namely the continued and willful failure of Defendants to comply with their obligations to compensate their employees as required by the FLSA.

42.     As such, the class of similarly situated Class Members is properly defined as follows:

**All current and former carpenters, electricians, and laborers employed by the Defendants during the three years preceding the issuance of Notice authorized by the Court.**

### FIRST CAUSE OF ACTION: VIOLATION OF 29 U.S.C. § 207

43.     Plaintiffs incorporate by reference each allegation set forth above.

44.     Hamman, McGee, and Rodgers were each previously employed by Western Edge Construction, LLC.

45.     At all times relevant to this Complaint, Mark Tucker and Cindy Tucker were also

deemed to be "employers" of Western Edge's employees, including each of the Plaintiffs and other Class Members.  This is because they possessed ultimate power to hire and fire employees, had ultimate control over the employees' work schedules and conditions of employment, had ultimate authority to determine both the rate and method of the workers' employment, and were in charge of maintaining employee records.

46.     Throughout their employment of the Plaintiffs, each Defendant was aware that construction workers like Hamman, McGee, and Rodgers were entitled to receive overtime compensation at 1 ½ times their regular rate for hours worked in excess of forty hours per week.

47.     At all times relevant to this Complaint, Plaintiffs were entitled to be compensated for all hours worked in excess of forty hours per week at a rate of one and a half times their respective regular rates.

48.     Defendants violated the FLSA by failing to pay Plaintiffs and the Class Members overtime based on the formula set forth in the statute.

49.     For all time worked in excess of forty hours in each individual workweek, Plaintiffs and the Class Members were entitled to be paid one and one-half times their regular rates.  29 U.S.C. § 207.

50.     The Defendants have therefore violated the FLSA by failing to pay the Plaintiff and the Class Members in a manner consistent with the FLSA's requirements.

51.     No exemption provided in the FLSA or recognized by the Courts authorized the Defendants to fail to pay overtime to Plaintiffs or other members of the Class.

52.     Defendants' failure to pay overtime to Plaintiffs and the Class Members was willful. Further, it was not based on any good faith belief that their conduct did not violate the FLSA.  The conduct described in this Complaint constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

53.     Defendants failed to compensate Plaintiffs and the Class Members for the hours they worked in excess of forty hours per week, in violation of the FLSA.

54.     Plaintiffs and the Class Members are entitled to recover all unpaid wages pursuant to the FLSA.

55.     In addition to recovering their unpaid wages, Plaintiffs and the Class Members are entitled to recover an additional amount equal to their unpaid wages as liquidated damages pursuant to 28 U.S.C. § 216(b).

### ATTORNEY'S FEES

56.     Plaintiffs and the Class Members are entitled to recover reasonable and necessary attorney's fees and costs as required by 29 U.S.C. § 216(b).

### JURY DEMAND

57.     Plaintiffs hereby demand a trial by jury.

### PRAYER FOR RELIEF

THEREFORE, Plaintiffs hereby request that the Court certify this matter as an opt-in Collective Action pursuant to the Fair Labor Standards Act and, moreover, that the Court enter judgment in favor of them and the Class Members awarding:

(a)     All unpaid wages owed under the Fair Labor Standards Act;

(b)     Liquidated damages in an amount equal to all unpaid wages owed under the Fair
Labor Standards Act;

(c)     Reasonable and necessary attorneys' fees, costs, and expenses of this action as
provided by the Fair Labor Standards Act;

(d)     A finding that Defendants' violations of the Fair Labor Standards Act were willful;

(e)     Pre- and post-judgment interest; and

(f)     All such other and further relief to which Plaintiffs and the Class Members may be
entitled.

Respectfully submitted,

DOW GOLUB REMELS & GILBREATH, PLLC

 /s/ Andrew S. Golub
Andrew S. Golub
asgolub@dowgolub.com
S.D. Tex. No. 13812
Texas Bar No. 08114950
2700 Post Oak Blvd., Suite 1750
Houston, Texas 77056
Telephone: (713) 526-3700
Facsimile: (713) 526-3750

**ATTORNEYS FOR PLAINTIFF**

12

# EXHIBIT A

## CONSENT TO BECOME A PARTY PLAINTIFF

Name: _Skylar Hamman_

1. I consent and agree to pursue my claims of unpaid overtime and/or minimum wage through the lawsuit filed against my employer.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act.  I hereby consent, agree and opt-in to become a plaintiff herein and be bound by any judgment by the Court or any settlement of this action.

3. I hereby designate Andrew S. Golub and the law firm of Dow Golub Remels & Gilbreath, PLLC, to represent me in connection with my claim for unpaid overtime in this matter.

4. I intend to pursue my claim individually, unless and until the court certifies this case as a collective or class action.  I agree to serve as the class representative if the court approves.  If someone else serves as the class representative, then I designate the class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with the plaintiffs' counsel concerning attorney's fees and costs, and all other matters pertaining to this lawsuit.

5. In the event the case is certified and then decertified, to the extent necessary I authorize Plaintiffs' counsel to use this Consent Form to re-file any claims in a separate or related action against my employer.

(Signature) _[signature]_                (Date Signed) _3/14/17_

# EXHIBIT B

## CONSENT TO BECOME A PARTY PLAINTIFF

Name: _Stewart McGee_

1. I consent and agree to pursue my claims of unpaid overtime and/or minimum wage through the lawsuit filed against my employer.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act. I hereby consent, agree and opt-in to become a plaintiff herein and be bound by any judgment by the Court or any settlement of this action.

3. I hereby designate Andrew S. Golub and the law firm of Dow Golub Remels & Gilbreath, PLLC, to represent me in connection with my claim for unpaid overtime in this matter.

4. I intend to pursue my claim individually, unless and until the court certifies this case as a collective or class action. I agree to serve as the class representative if the court approves. If someone else serves as the class representative, then I designate the class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with the plaintiffs' counsel concerning attorney's fees and costs, and all other matters pertaining to this lawsuit.

5. In the event the case is certified and then decertified, to the extent necessary I authorize Plaintiffs' counsel to use this Consent Form to re-file any claims in a separate or related action against my employer.

(Signature) _____    (Date Signed) _3/16/17_

# EXHIBIT C

## CONSENT TO BECOME A PARTY PLAINTIFF

Name: _Steve Rodgers_

1. I consent and agree to pursue my claims of unpaid overtime and/or minimum wage through the lawsuit filed against my employer.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act. I hereby consent, agree and opt-in to become a plaintiff herein and be bound by any judgment by the Court or any settlement of this action.

3. I hereby designate Andrew S. Golub and the law firm of Dow Golub Remels & Gilbreath, PLLC, to represent me in connection with my claim for unpaid overtime in this matter.

4. I intend to pursue my claim individually, unless and until the court certifies this case as a collective or class action. I agree to serve as the class representative if the court approves. If someone else serves as the class representative, then I designate the class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with the plaintiffs' counsel concerning attorney's fees and costs, and all other matters pertaining to this lawsuit.

5. In the event the case is certified and then decertified, to the extent necessary I authorize Plaintiffs' counsel to use this Consent Form to re-file any claims in a separate or related action against my employer.

(Signature) _Steve Rodgers_          (Date Signed) _3-17-17_