IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| SKYLAR HAMMAN, STEWART MCGEE, and STEVE RODGERS, Individually and On Behalf of All Others Similarly Situated, *Plaintiffs*, | § § § § § § | CIVIL ACTION NO. 3:17-cv-0092 |
| vs. | § § | |
| WESTERN EDGE CONSTRUCTION, LLC, MARK TUCKER, and CINDY TUCKER, *Defendants*. | § § § § | JURY TRIAL DEMANDED |

## JOINT MOTION TO APPROVE SETTLEMENT

Plaintiffs Skylar Hamman, Stewart McGee, and Steve Rodgers (individually and on behalf of all opt-in plaintiffs) and Defendants Cindy and Mark Tucker, now file this Joint Motion to Approve Settlement. In support, Plaintiffs and the Tuckers state as follows.

### FACTUAL BACKGROUND

This collective action was filed on behalf of construction workers who were employed by Defendant Western Edge Construction, LLC ("Western Edge"). Western Edge is jointly owned by Defendants Cindy and Mark Tucker, who each own 50% of its membership units. The Plaintiffs contended in this litigation that each defendant met the broad definition of "employer" set forth in the Fair Labor Standards Act.

The three named Plaintiffs filed suit and consents to participate as plaintiffs on March 17, 2017. Docket Entry No. 1. The Defendants filed an Answer on June 12, 2017, and an Amended Answer on July 3, 2017. Docket Entry Nos. 24 and 30.

On July 14, 2017, the parties jointly moved for entry of an order conditionally certifying this matter as a collective action under the FLSA. Docket Entry 33. The Court granted that motion and authorized notice on July 17, 2017. Docket Entry No. 34. Before the deadline imposed by the Court, 34 more plaintiffs filed consents to participate, designating Hamman, McGee, and Rodgers as representative plaintiffs authorized to make settlement decisions about this case. *See* Docket Entry Nos. 2, 4, 6-10, 14, 19-20, 35-37, 39-41, 43, and 45-46.

Meanwhile, the parties engaged in substantial document discovery. The Defendants collectively produced approximately 10,000 pages of documents, including thousands of pages of payroll records. After obtaining the necessary documents, the Plaintiffs' counsel prepared a calculation of overtime and liquidated damages claimed in this case, which was served on the Defendants around April 17, 2018.

However, during this time the Defendants asserted that Western Edge had ceased operations altogether and had no assets available to satisfy a judgment. Moreover, on May 3, 2018, the Defendants' counsel moved to withdraw from this case on grounds that they were no longer being paid. Docket Entry No. 53. The Court granted that motion on May 15, 2018, but admonished Defendants that Western Edge could not remain unrepresented. Docket Entry No. 66. Despite that, the Tuckers chose not to retain new counsel, and have affirmatively stated that they would not be retaining new lawyers to represent Western Edge. Further, they represented to Plaintiffs' counsel that they themselves had limited

means to satisfy any judgment obtain in this case and, moreover, that they might seek bankruptcy protection.

The Plaintiffs sent the Tuckers written discovery to verify their assertions about their financial resources. In sworn interrogatory answers, the Tuckers represented that they had limited assets and substantial liabilities. This included auto loans exceeding $98,000, credit card and other debt exceeding $188,000, and home equity of only around $51,000. They disclosed cash assets of only around $7,000. They also produced tax returns demonstrating that they had incurred substantial losses in the operation of Western Edge, with accrued carry-forward net operating losses currently exceeding $2 million.

Despite this, the Plaintiffs and the Tuckers have negotiated a settlement, the terms of which the three named plaintiffs and their undersigned counsel believe are appropriate under the circumstances.

## THE NEED FOR COURT APPROVAL

"Ordinarily there [is] no need" for the Court to approve the settlement of a "dispute between employer and employees [because] people may resolve their own affairs, and an accord and satisfaction bars a later suit." *Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). However, this case involves claims for unpaid wages brought under the FLSA, and courts generally consider there to be only two ways to properly resolve of such claims: (1) a settlement supervised by the Department of Labor or (2) a settlement approved by the Court. *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679

3

F.2d 1350, 1352 (11th Cir. 1982); see also, *Jarrard v. Southeastern Shipbuilding Corp.*, 163 F.2d 960 (5th Cir. 1947).  When reviewing a proposed settlement, courts "scrutinize[e] the settlement for fairness" and decide whether the proposed settlement represents a "fair and reasonable resolution of a bona fide dispute over FLSA provisions."  *Lynn's Food Stores*, 679 F.2d at 1353 and 1355.

In detailing the circumstances justifying approval of settlements in litigated cases, *Lynn's Food Stores* explained that:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context.  The employees are likely to be represented by an attorney who can protect their rights under the statute.  Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching.  If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354.  The Supreme Court long ago noted, moreover, that there are many situation in which it may be advantageous for the employees to compromise even where, as here, a settlement is being made for less than full liability.  *S. A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 113 (1946).

It is true that the Fifth Circuit recently approved a private compromise of an FLSA claim negotiated between an employer and employees even in the absence of court approval, where there existed "a bona fide dispute as to liability" as to the amount of hours

worked and the compensation due. *See Martin v. Spring Break '83 Production*, 688 F.3d 247, 255 (5th Cir. 2012). But, given the conflicting authority on this issue and out of an abundance of caution, the parties have agreed to condition their agreement on obtaining approval from this Court. This will make certain that the agreement enjoys the imprimatur of a neutral judge who has scrutinized the agreement for fairness under the particular considerations presented here.

Finally, the parties note that because this case involves a class of plaintiffs it is especially important that it receive judicial scrutiny and approval. *Quintanilla v. A & R Demolition, Inc.*, 2008 WL 9410399, *2 (S.D. Tex. May 7, 2008). When determining whether to approve such a settlement, the courts generally consider six factors: (1) whether the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs prevailing on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members. In considering these factors, though, the Court should remember that there exists a strong presumption favoring a finding that a settlement is fair. *Ahearn v. Fibreboard Corp.*, 162 F.R.D. 505, 527 (E.D. Tex. 1995).

## THE SETTLEMENT AGREEMENT IS FAIR UNDER THE CIRCUMSTANCES AND SHOULD BE APPROVED

The corporate defendant in this case has ceased operations and the Tuckers have represented that it has no assets to available to satisfy a judgment. They have also

represented that there are other outstanding judgment against it. Further, the Tuckers have made substantial disclosures about their personal finances and demonstrated to the undersigned counsel's satisfaction that they would likely be unable to satisfy a judgment for any material amount, and certainly not for the full amount of the overtime, liquidated damages, and attorneys' fees sought in this case. Prudence thus dictates reaching *a* resolution remunerative to the plaintiffs, even if for less than all the wages claimed to be owed. *S. A. Schulte Inc.*, 328 U.S. at 113.

To that end, the parties have agreed to the following settlement structure:

- The Tuckers will pay the gross amount of $50,000. This will consist of $10,000 paid within ten days of Court approval, with the remaining balance paid monthly over three years with interest at 8% per annum;

- The monthly payments will begin on the first day of the month following 30 days after the Tuckers make the initial $10,000 payments and are due on the first day of each successive month until paid. Payment deadlines falling on a weekend or federal holiday are extended to the next non-weekend, non-holiday day.

- The Tuckers will be deemed in default if a payment is not made by the 7th day after a payment is due;

- The Tuckers' obligation to pay will be secured by an agreed judgment to be entered by the Court in the amount of $80,000, or twice the financed amount. The plaintiffs have agreed not to seek to collect such judgment unless or until the Tuckers commit a default;

- In light of the Tuckers' representation that Western Edge is defunct and unable to satisfy any judgment, a separate judgment will be entered against Western Edge in an amount equal to the full amount of overtime and liquidated damages claimed by the plaintiffs. In this regard, Western Edge is not represented by counsel and so its pleadings are subject to being struck and a default entered against it. *Donovan v. Road Rangers Country Junction,*

*Inc*, 736 F.2d 1004, 1005 (5th Cir. 1984), *cert. denied*, 469 U.S. 1217 (1985); *Mount Vernon Fire Ins. v. Obodoechina*, 2009 WL 424326 (S.D. Tex. Feb. 19, 2009) (Rosenthal, J.). The Tuckers, who collectively own 100% of Western Edge, agree to the default and entry of such a judgment;

- The sums received from the Tuckers will be allocated as follows:

    - 35% for attorney's fees, which represents a voluntary fee reduction from the 40% fee set forth in the plaintiffs' fee agreements with their counsel;
    - Reimbursement to plaintiffs' counsel for outstanding expenses incurred on plaintiffs' behalf; and
    - The balance to be disbursed annually to the plaintiffs proportionally based on the damage calculation served on Defendants on or around April 17, 2018. The funds will be held in the undersigned counsel's trust account pending disbursements to the plaintiffs.

A copy of the executed settlement agreement is attached hereto as Exhibit 1.

Given the Defendants' financial circumstances, plaintiffs' counsel and the three lead plaintiffs agree that this represents a reasonable resolution of the case. Further, each of the factors discussed in *Quintanella* militate in favor of approving this settlement.

First, there is no evidence that the settlement was obtained by fraud or collusion. The plaintiffs were represented by experienced counsel and the settlement was reached through arms-length negotiations with the Tuckers following an extended period of discovery.

Second, continued litigation of this case would likely be complex, expensive, and protracted. Virtually all of the class members reside outside of Texas, and so a trial would require some or all of them to incur substantial travel costs to come here to testify about their damages. Additionally, absent settlement the parties will shortly incur substantial

costs briefing dispositive motions, which if denied would require the parties to incur substantial additional fees and expenses preparing for and then trying the case.

Third, the litigation has reached a stage at which the parties can accurately assess whether settlement is beneficial to the class. That is particularly the case given the Defendants' functional insolvency. Prudence dictates getting *something* to benefit the class rather than a judgment that would simply be uncollectible.

Fourth, while the Plaintiffs certainly believe that they would prevail against the Tuckers, they also might not. The Tuckers each owned 50% of Western Edge and were substantially involved in its management. The Plaintiffs believe that the evidence establishes that the Tuckers were "employers" as defined by the FLSA, but it is possible a jury would conclude otherwise. This uncertainly weighs in favor of settlement.

Fifth, the range of possible recovery against functionally insolvent defendants militates strongly in favor of approving the settlement. That said, this resolution will result in a judgment favoring the Plaintiffs in the full amount of unpaid wages and liquidated damages claimed. As for the Tuckers, securing a final judgment against them for that amount will be functionally useless if they are unable to satisfy it. It is true that the payments from the Tuckers will result in a relatively small recovery for each plaintiffs, but that is no reason to withhold approval. After all, "'[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" *Parker v.*

8

*Anderson*, 667 F.2d 1204, 1210 n.6 (5th Cir. 1982), *quoting City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2nd Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 48 (2nd Cir. 2000). The Second Circuit further noted in *City of Detroit* that "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *City of Detroit*, 495 F.2d at 455 n.2. Simply put, the question is whether the result here is fair and reasonable under the circumstances, not how the settlement amount stands in comparison to the total amount sought as damages.

In short, the parties are reaching an expedient settlement. They will have a judgment in full (albeit one that is likely uncollectible) against the corporate employer, and at least some guarantee that they will be paid something from the Tuckers. That would almost certainly not be the case if Plaintiffs recovered a large judgment that the Tuckers could never possible satisfy (and that could easily drive them into bankruptcy).

Finally, the opinions of class counsel and the three lead plaintiffs (who were designated by the absent class members to make settlement decisions) all favor this resolution. In this regard, courts regularly "rely on the judgment of experienced counsel for the parties." *San Antonio Hispanic Police Officers' Organization, Inc. v. City of San Antonio*, 188 F.R.D. 433, 453 (W.D. Tex. 1999) (interior quotes and citation omitted). The Tuckers are unrepresented, but the undersigned counsel for the Plaintiffs is an experienced and board-certified employment lawyer who has been regularly representing employees in

9

litigation for more than 23 years. He has tried many cases and settled even more. He has substantial experience helping clients weigh the costs and benefits of proceeding with litigation, including in situations where the defendants are individual litigants of limited means who could be unable to satisfy a judgment for full value obtained through litigation. Having conducted substantial discovery about the Defendants' finances, taking into account that their lawyer withdrew because of non-payment, and considering that the Defendants have since then been unable to afford new counsel, the plaintiffs' counsel's studied recommendation is that the Plaintiffs reach a resolution with the potential of paying them something rather than barreling forward towards a judgment that would likely net them nothing. Further, this settlement has the approval and endorsement of the three lead plaintiffs – Hamman, Rodgers, and Stewart – each of whom have signed it.

In sum, the parties jointly submit that this settlement has been the result of arms-length negotiation that has taken into account the Defendants' financial wherewithal, as well as the significant costs and risks associated with proceeding with litigation. Since all of the relevant factors militate in favor of a class settlement, the parties respectfully request that the Court approve their agreement by entering the attached Order and the agreed judgments against the Tuckers and Western Edge.

### A NOTE ABOUT ATTORNEY'S FEES

Under his fee agreement with the Plaintiffs, the undersigned attorney is entitled at to receive a fee equal to 40% of the gross sums recovered, plus reimbursement for all

advanced expenses. Given the expedient nature of this settlement, though, he has agreed voluntarily to reduce his fee to 35%. While it is not necessarily much in terms of dollars, it does have the effect of allocating more than $2,500 more to the Plaintiffs (assuming that the Tuckers make all of the payments required under the settlement). Importantly, the undersigned attorney represents that his firm has spent more than $76,000 in time prosecuting this case, which underscores that this settlement reflects an expedient resolution under the circumstances.

## CONCLUSION

The parties therefore jointly request that the Court promptly approve their settlement so that the Tuckers can begin making payments. A proposed Order and the two agreed judgments are attached hereto.

Respectfully submitted,

/s/ Andrew S. Golub
Andrew S. Golub
Texas Bar No. 08114950
S.D. Tex. No. 13812
asgolub@dowgolub.com
2700 Post Oak Blvd., Suite 1750
Houston, Texas 77056
Telephone: (713) 526-3700
Facsimile: (713) 526-3750

ATTORNEYS FOR PLAINTIFFS

/s/ Mark Tucker (by permission)
Mark Tucker, *Pro Se*
2295 S. Bosley Trail
Santo, TX  76472

/s/ Cindy Tucker (by permission)
Cindy Tucker, *Pro Se*
2295 S. Bosley Trail
Santo, TX  76472

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2018, I served a copy of the foregoing document on the following parties via the indicated means:

Mark Tucker        *First Class Mail*
Cindy Tucker       *First Class Mail*
2295 S. Bosley Trail
Santo, TX  76472

/s/ Andrew S. Golub
Andrew S. Golub